**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD W. MIGLIORE, J.D.** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO.   11-4018** |
| | : | |
| **ARLENE ACKERMAN, Superintendent;** | : | |
| **THE SCHOOL DISTRICT OF** | : | |
| **PHILADELPHIA, THE SCHOOL** | : | |
| **REFORM COMMISSION; and,** | : | |
| **COMMISIONERS ROBERT L. ARCHIE.,** | : | |
| **JR., ESQUIRE, Chairman, DENISE** | : | |
| **McGREGOR ARMBRISTER, JOSEPH A.** | : | |
| **DWORETZKY, ESQUIRE, and JOHNNY** | : | |
| **IRIZARRY; LUCY FERIA, Regional** | : | |
| **Superintendent; JAMES DOUGLASS,** | : | |
| **Assistant Regional Superintendent;** | : | |
| **ESTELLE G. MATTHEWS, Chief Talent** | : | |
| **Development Officer; ANDREW ROSEN,** | : | |
| **ESQUIRE, Human Resources** | : | |
| **Representative; and MARY SANDRA** | : | |
| **DEAN, Principal.** | : | |
| | : | |
| **Defendants.** | : | |

**DuBois, J.**                                                                                 **August 12, 2013**

### M E M O R A N D U M

## I.     INTRODUCTION

This case involves the free speech and due process rights of a former public school

assistant principal.   Plaintiff, Richard Migliore, was a public school employee for over thirty

years and an assistant principal since 1994.   In September 2009, however, Migliore submitted his

notice of retirement following a dispute over whether he would be demoted from his position as an

assistant principal.   On June 20, 2011, Migliore filed suit against numerous defendants on the

grounds that they retaliated against him in violation of his free speech rights, denied him due

process, and failed to prevent wrongful acts against him.   In his Second Amended Complaint, he asserts claims against the School District of Philadelphia, former superintendent Dr. Arlene Ackerman, former regional superintendent Lucy Feria, former assistant regional superintendent James Douglass, former human resources employee Estelle Matthews, employee relations deputy Andrew Rosen, and former principal Mary Sandra Dean.   Migliore has also named as defendants the School Reform Commission ("SRC")–the governing body of the School District–along with commissioners of the SRC: former chairman Robert Archie, Jr., Joseph Dwortetzky, Esq., Johnny Irizarry, Esq., and Denise Armbrister.   Each of the individual defendants are named in their personal capacities.   (Second Am. Compl. at ¶1.)   Presently before the Court are cross-motions for summary judgment.   For the reasons that follow, the Court denies Migliore's motion, and grants in part and denies in part defendants' motion.

## II.	BACKGROUND

### A.	Career History Through 2006-2007 School Year

Migliore began his teaching career in 1975 at University City High School in Philadelphia, Pennsylvania and spent 18 years at that school as a teacher.   (Defendants' Undisputed Facts, at ¶¶16-17.)   Migliore then worked as an assistant principal, primarily at Furness High School, until 2006, when he was assigned to Jules Mastbaum Vocational/Technical School ("Mastbaum") in Philadelphia.   (Id. at ¶¶ 22-23.)   Defendant Mary Sandra Dean was the principal of Mastbaum at that time.   (Id.)   Dean claims that she spoke with Migliore several times about problems with his job performance during his first year at Mastbaum, the 2006-2007 school year, but states she did not put any specific complaints in writing that year. (Id. ¶¶ 34-37.)

For several years prior to his assignment to Mastbaum, Migliore was engaged in writing a book entitled "Whose School is It?   The Democratic Imperative for Our Schools" ("The Book").

The Book generally discusses principles of "school governance and leadership." (Pl. Ex. A; Pl. Statement of Material Facts, at ¶13.) On August 8, 2007, Migliore addressed the SRC concerning the contents of his soon-to-be-published Book and provided the SRC commissioners with copies of the Book. (Pl. Resp. at 10.) Migliore claims that prior to the address, he received a call from the assistant to Regional Superintendent Feria, who said that if he spoke to the SRC he would be "committing suicide." (Id.) Migliore also claims that he met with Feria the following week, gave her a copy of the Book, and she expressed displeasure with the chapter titled the "The Inherent Immorality of Bureaucracy." (Id.)

B. 2007-2008 School Year

Upon returning to Mastbaum for the 2007-2008 school year, Migliore contends that he experienced "immediate" hostility from Dean, although Dean claims that she was not aware of Migliore's address to the SRC or its contents. (Id.; Deposition of Mary Sandra Dean, at 106.) Dean also testified at her deposition that she was not aware that Migliore was working on the Book prior to its publication. (Deposition of Mary Sandra Dean, at 103.) Specifically, Dean stated that she had gone into Migliore's office, although she could not recall when, and Migliore told her, "I wrote a book and I'm going to do another chapter . . . [and] I'm thinking about putting you in my book." (Id. at 104.) Dean responded, "Be very careful what you put in writing." (Id. at 105.) For his part, Migliore claims that Dean first became aware of the Book some time in the fall of 2007. (Deposition of Richard Migliore, at 61.) Migliore concedes that he does not "think that [Dean] read the book," but believes that she certainly saw the Book's cover and could "surmise what [the book] means . . . . " (Id. at 57.)

Dean claims that she wrote "four or five" disciplinary memoranda known as "204's" during the 2007-2008 school year in relation to Migliore's "job performance." (Deposition of

Mary Sandra Dean, at 121.) Migliore disputes this statement and argues that only "one 204 was written pertaining to the school year 2007-2008 . . . . " (Pl. Answer to Defs' Facts, at ¶ 39.) Migliore further claims that at one point during the year, because he had written a "satisfactory observation" of a provisional teacher who Dean "didn't like," Dean told Migliore that he should transfer to a different school, or she would "write so much paper on you that you will lose your job by the end of the year." (Pl. Resp. at 11; Deposition of Richard Migliore, at 60.)

Following this exchange, Migliore wrote a letter entitled "Transfer Request and Filing of Formal Complaint" to Mike Lerner, then-president of his union, the Commonwealth Association of School Administrators ("CASA"). (Pl. Ex. B.) In the letter, Migliore wrote that Dean was "obviously looking for reasons she can use to justify 'writing me up' . . . . It is clear that I am working within a 'hostile working environment' and it is affecting me." (Id.) Migliore requested in the letter that Lerner "officially begin the process of requesting a transfer," from Mastbaum to another school. (Id.) Migliore later participated in a conference with regional superintendent Feria concerning this request, but it was denied. (Pl. Resp. at 11.)

C. 2008-2009 School Year

On August 23, 2008, Migliore again addressed the SRC on issues of democracy and school governance and repeatedly mentioned the Book. (Pl. Resp. at 11.) He again gave the SRC commissioners copies of the Book following this address. (Id.) Migliore adds that he had also given then-superintendent Ackerman a copy of the Book earlier that month and that she had "eagerly" accepted it. (Id.) Dean contends that she was not aware of Migliore's second address to the SRC or its contents.

A subsequent letter from then-superintendent Ackerman and then-Chairman Archie states that during the 2008-2009 school year Dean wrote numerous disciplinary memoranda concerning

Migliore's job performance, including complaints regarding his failure to complete a task concerning textbook accounting and locker assignments, his failure to complete the distribution of Workmen's Compensation forms to staff members, and his failure to monitor weekly lesson plans. (Pl. Ex. S, at 1.)   The letter goes on to state that Dean twice recommended that Migliore be suspended without pay for multiple days, and on December 19, 2008 Migliore was suspended for two days without pay for certain of these failures.   (Id.)

    D.  Recommendation of Demotion

The letter from then-superintendent Ackerman and then-Chairman Archie concludes by stating that on May 29, 2009, Dean issued a 204 which stated that Migliore had been "consistently negligent in the performance of [his] duties as an assistant principal," and recommended that Migliore be demoted from assistant principal to teacher.   (Id. at 2.)   This recommendation was reiterated in a "204 conference summary" issued by Dean on June 15, 2009.   (Defendants' Undisputed Facts, at ¶70.)   On June 25, 2009, assistant regional superintendent James Douglass participated in a "secondary conference" with Migliore regarding Dean's demotion recommendation.   (Id. at ¶75.)   Douglass subsequently issued a "Record of Conference," which recommended that Migliore be demoted from his position as assistant principal.   (Id.) Then-regional superintendent defendant Lucy Feria claims she participated in a secondary conference in May or June of 2009 and recommended Migliore's demotion, though Migliore disputes that Feria was present at any such conference.   (Id. at ¶78; Pl. Answer to Defs' Facts, at ¶78.)   Migliore claims that after the June 25, 2009 conference he turned in his keys upon Dean's request and moved all of his belongings out of his Mastbaum office.   (Pl. Ex. KK, at 491.)

On July 23, 2009, Migliore received an email from School District's Office of Professional Staffing which stated that they had been "notified of your demotion from assistant principal at

Mastbaum High School." (Def. Ex. 15.) Migliore responded that this was "interesting to hear since I have not been given official notice yet and this situation was very much in controversy." (Def. Ex. 16.) The Office of Professional Staffing responded that "we were told this was final, but we don't always get the correct information. I would advise you to choose a location [to work as a teacher], and you can always give it up later in the summer if things work out." (Id.) Milgiore later sent that office an e-mail stating that he did not wish to choose a teaching position because, "[a] demotion can not take place without a vote of the School Reform Commission . . . I have not yet been demoted and do not expect to be." (Def. Ex. 19.) On July 29, 2009, Migliore received a form titled "Assignment Introduction," which Migliore claims officially assigned him to a position as a teacher. (Pl. Statement of Material Facts, at ¶41.)

On August 14, 2009, then-superintendent Ackerman and then-Chairman Archie sent Migliore the letter mentioned above, which summarized several 204's and other disciplinary memoranda issued by Dean and stated that Ackerman and Archie "would recommend to the School Reform Commission that you be demoted to the position of teacher." (Pl. Ex. S.) The letter noted that plaintiff was "entitled to request a hearing before the School Reform Commission . . ." and set August 25, 2009 as the date for such a hearing. (Id. at 3.)

On August 18, 2009, Migliore sent a letter to Francis Bielli, Assistant General Counsel for the School District, requesting a hearing and stating Migliore's intent to appeal the recommendation of his demotion. (Pl. Ex. T.) Bielli then notified Migliore that he had received his notice of appeal and request for a hearing. (Pl. Ex. At U.) Bielli stated that the hearing previously scheduled for August 25, 2009 would be postponed, and that he would be requesting available dates from SRC commissioners for a future hearing. (Id.) However, before a new hearing date could be scheduled, Migliore submitted his notification of retirement on August 31,

2009. (Pl. Ex. AA.) In his retirement notification, Migliore stated that his last day of work was June 30, 2009 and that his position was assistant principal. (Id.) On September 3, 2009, the Retirement Department for the school district sent Migliore a letter to "acknowledge [his] retirement from [his] position with the School District of Philadelphia at the close of business June 30, 2009." (Pl. Ex. CC.)

E. Hearings and Procedural History

Following his notice of retirement, the SRC held multiple hearings regarding the recommendation that Migliore be demoted from assistant principal. (Defendants' Undisputed Facts, at ¶101.) In all, the SRC held hearings before Commissioner Dworetzky on May 25, 2010, September 14, 2010, September 29, 2010, and January 6, 2011. (Id. at ¶102.) At the conclusion of the hearings, Commissioner Dworetzy "found that Migliore was not constructively discharged . . . [and] recommended to the SRC that the SRC dismiss the matter without further hearing because Migliore had not been demoted prior to his retirement and had not been constructively discharged." (Id. at ¶107.) By resolution dated June 15, 2011, the SRC resolved that Milgiore retired from the School District effective June 30, 2009, and adopted the findings of Commissioner Dworetzky. (Id. at ¶108.)

Milgiore then appealed that decision to the Secretary of Education. Migliore v. Sch. Dist. of Philadelphia, 2013 WL 3156533, at *3 (Pa. Commw. Ct. June 18, 2013).[1] "After conducting a de novo review, the Secretary, by order dated August 3, 2012, found that Migliore was not demoted or constructively discharged, but rather that he had voluntarily retired. Thus, he denied Migliore's appeal." Id. On August 29, 2012, Migliore appealed to the Pennsylvania Commonwealth Court on several grounds, including "whether Migliore's due process rights were violated . . . ." Id. at *1. In an opinion issued on June 18, 2013, the Commonwealth Court held

---

[1] The procedural history after June 15, 2011 was not included by the parties in their motion papers.

in relevant part that Migliore was "demoted in fact," but no state law violation occurred because he voluntarily resigned before a hearing could be held. Id. at *4-6. In addition, the court ruled that because Migliore was offered a hearing prior to his resignation, and because a hearing was eventually held, "Migliore was afforded due process." Id. at *7. The Commonwealth Court thus affirmed the order of the Secretary of Education. Id.

While his proceedings in state court were ongoing, Milgiore filed the instant suit in this Court on June 20, 2011. Following the decision of the Commonwealth Court, the parties submitted additional briefing concerning the effect, if any, of that decision on this case.

## III.  LEGAL STANDARD

In considering motions for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant a motion for summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986) (citation omitted).

## IV. DISCUSSION

Milgiore's Second Amended Complaint asserts three claims: (1) First Amendment retaliation under 42 U.S.C. § 1983, (2) denial of procedural due process under 42 U.S.C. § 1983, and (3) neglect to prevent under 42 U.S.C. § 1986. In response to defendants' motion for summary judgment, Migliore stated that he "does not herein pursue his neglect to prevent claim under Section 1986." (Pl. Resp. at 23.) The Court accordingly concludes that Migliore has abandoned this claim, and defendants' motion for summary judgment is granted as to this claim. The Court addresses Migliore's remaining claims, for First Amendment retaliation and denial of due process, in turn.

### A. First Amendment Retaliation

In evaluating government employees' First Amendment retaliation claims, courts engage in a three-step analysis. First, the employee must show that he engaged in protected activity. Second, the employee must prove that this protected activity was a substantial factor in the alleged retaliatory action by the employer. Third, the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct. Hill v. Scranton, 411 F.3d 118, 125 (3d Cir. 2005).

With respect to the first step, the determination whether an employee's speech is protected is itself subject to a three-prong analysis: "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." Hill v. Borough of Kutztown, 455 F.3d 225, 241–42 (3d Cir. 2006) (quoting

Garcetti v. Ceballos, 547 U.S. 410, 421 (2006)).

Concerning the second step, an employee must show that his employer took an adverse employment action against him, and that there was a causal connection between his protected speech and that adverse action. To establish an adverse employment action in the context of a First Amendment claim, "a plaintiff must . . . show that the defendants' action was sufficient to deter a person of ordinary firmness from exercising his or her rights." Revell v. City of Jersey City, 394 F. App'x 903, 906 (3d Cir. 2010) (internal quotations omitted). Next, "[t]o establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof the plaintiff must show that from the evidence gleaned from the record as a whole the trier of the fact should infer causation." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (internal quotations omitted). "In addition, summary judgment may be defeated when 'a reasonable inference can be drawn that an employee's speech was at least one factor considered by an employer in deciding whether to take action against the employee . . . .'" Kovac v. Pennsylvania Tpk. Comm'n, 444 F. App'x 588, 590-91 (3d Cir. 2011) (quoting Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 795 (3d Cir. 2000)).

Migliore makes three arguments in his First Amendment claim. First, he avers that he was retaliated against for his speeches and the Book, which all related to democratic practices in school governance. Second, Migliore claims that he was retaliated against for "exercis[ing his] freedom of speech and association when he went to his CASA union president to seek relief from the hostility of Defendant Dean and the subsequent presentation of his Grievance and Complaint to regional superintendent Feria . . . ." (Second Am. Compl. at ¶136.) Finally, Migliore also asserts

that the "exercise of his leadership beliefs and researched [sic] based practices . . . along with his associations and friendships with teachers was a substantial factor in the retaliatory action and reprisal." (Second Am. Compl. at ¶135.)

In his motion papers, Migliore only mentions the last claim in passing. For instance, he states, "The more he associated with the teachers as Mastbaum and the friendlier he became with his new colleagues, the more intensely Ms. Dean wrote him up." (Pl. Mot. at 20.) Milgiore presents no argument concerning whether such friendships constitute protected First Amendment activity. Further, he has not explicitly identified any evidence in his motion papers supporting his claim that his leadership beliefs, research-based practices, or associations and friendships with teachers were a factor in any adverse action taken against him. The Court therefore grants defendants' motion for summary judgment and denies plaintiff's motion for summary judgment, as to this claim.

The Court addresses Migliore's remaining First Amendment arguments in turn.

1. <u>Speeches and the Book</u>

First, Migliore claims that he was demoted and otherwise harmed by defendants in retaliation for his speeches and the Book. This claim encompasses Migliore's speeches to the SRC in August of 2007 and August of 2008, as well as the Book, "Whose School is It?" The Book contains chapters such as "The Grand Hypothetical of School Governance," "Leadership for the Twenty-First Century," and "School Councils & Why They Don't Work."

The parties disagree over whether Migliore has shown (1) an adverse employment action in retaliation for protected speech, and (2) whether any such adverse action is causally connected to protected speech. Defendants do not address the third prong of the retaliation analysis, whether they would have taken the same action in the absence of protected speech. The Court addresses

the disputed prongs of the analysis in turn.

       i.    Protected Speech/Adverse Action

Defendants do not contest that Migliore's authored his speeches and the Book as a citizen on a matter of public concern and they do not contend that they had "an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made."  Borough of Kutztown, 455 F.3d at 241-42.   The Court notes that Migliore's speeches and Book addressed broad themes related to school administration and democracy.  See also Connick v. Myers, 461 U.S. 138, 147 (1983) ("An employee's speech addresses a matter of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community.").   The Court therefore concludes that Migliore's speeches and Book constitute protected First Amendment activity.

Defendants argue, however, that Migliore has presented no evidence of an "adverse employment action" which could constitute retaliation for his speech.   (Def. Resp. at 17.)   On this issue, defendants claim that because Migliore voluntarily retired, he was never formally demoted and thus experienced no adverse employment action.   The Court rejects defendants' argument on this issue.

"A First Amendment retaliation claim will lie for any individual act which meets this 'deterrence threshold,' and that threshold is very low . . . a cause of action is supplied by all but truly de minimis violations."   O'Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir. 2006); see also Rutan v. Republican Party of Illinois, 497 U.S. 62, 76 n.8 (1990) (noting that "the First Amendment . . . protects state employees . . . from . . . even an act of retaliation as trivial as failing to hold a birthday party for a public employee when intended to punish her for exercising her free speech rights.") (internal quotations omitted).   As the Commonwealth Court noted, prior to

Migliore's resignation, "the District took action against Migliore effecting a change in his authority, prestige and responsibilities . . . ." Migliore, 2013 WL 3156533, at *3. For instance, Migliore was recommended for demotion by multiple defendants, was advised to select a position as a teacher for the coming school year, and claims to have received an official assignment to a teaching position. This Court concludes that such action is "sufficient to deter a person of ordinary firmness from exercising his or her rights . . ." and therefore constitutes an adverse employment action in the context of a First Amendment claim. Revell v. City of Jersey City, 394 F. App'x 903, 906 (3d Cir. 2010) (internal quotations omitted).

      ii.   Causal Connection

Next, the parties contest whether Migliore has shown a causal connection between his protected speech and alleged demotion. Defendants claim that the temporal gap is too great to infer a causal connection between Migliore's speech acts and any subsequent adverse employment action. Migliore last spoke to the SRC and provided several defendants with copies of the Book several months before the claimed demotion. Similarly, Dean became aware of the Book well over a year before she recommended his demotion from assistant principal. However, even where adverse actions and protected speech are not close in proximity, a causal connection may be proven through "a pattern of antagonism coupled with timing," just as in Title VII retaliation claims. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Brennan v. Norton, 350 F.3d 399, 420 (3d Cir. 2003) ("The causation required to establish a claim under § 1983 is identical to that required under Title VII.").

In this case, the Court concludes that Migliore has presented evidence connecting his speeches and Book publication to the alleged demotion, which is sufficient to show an ongoing pattern of antagonism. Migliore contends that Dean became aware of the Book some time in the

fall of 2007. Dean conceded in her deposition testimony that she became aware of Migliore's

Book at some point when she entered his office and spoke to him about the Book, but she did not

say when that took place. Dean also admits that, concerning the Book, she said, "Be careful what

you put in writing." (Depostion of Mary Sandra Dean at 105.) Milgiore further alleges that

Dean was hostile towards him following his address at the SRC in August of 2007. While the

parties dispute whether Dean had knowledge of Migliore's speech or its contents, Dean avers that

she wrote several 204's concerning Dean's job performance in the 2007-2008 school year.

Further, in a separate incident, Migliore alleges that Dean told him that he should transfer to a

different school, or she would "write so much paper on you that you will lose your job by the end

of the year." (Pl. Resp. at 11; Deposition of Richard Migliore, at 60.)

Following Migliore's second speech to the SRC in August of 2008, the rate of disciplinary

memoranda from Dean increased. The subsequent letter from then-superintendent Ackerman and

then-chairman Archie states that Dean issued nine 204's and other disciplinary memoranda

concerning alleged professional failures by Migliore during the 2008-2009 school year. (Pl. Ex.

S.) According to the letter, Dean twice recommended that Migliore be suspended without pay for

multiple days, but only one of these recommendations was approved by the SRC. (Id.) The final

204 issued by Dean that year was that of May 29, 2009, in which she recommended Migliore's

demotion from his position as assistant principal. (Id.)

 "[S]ummary judgment may be defeated when 'a reasonable inference can be drawn that

an employee's speech was at least one factor considered by an employer in deciding whether to

take action against the employee, the question of whether the speech was a motivating factor in

that determination is best left to the jury.'" Kovac v. Pennsylvania Tpk. Comm'n, 444 F. App'x

588, 590-91 (3d Cir. 2011) (quoting Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 795 (3d Cir.

2000)).   While many facts are disputed, given the above evidence of ongoing antagonism, the Court determines that Migliore has presented evidence sufficient to support a reasonable inference that his speech was at least one factor considered by defendants in recommending his demotion. See Woodson v. Scott Paper Co., 109 F.3d 913, 924 (3d Cir. 1997) (sufficient causal connection based on "pattern of antagonism" during intervening two-year period between protected activity and adverse action); Robinson v. Se. Pennsylvania Transp. Auth., Red Arrow Div., 982 F.2d 892, 895-96 (3d Cir. 1993) (holding that a "constant barrage of written and verbal warnings . . . [which] continued until [plaintiff's] discharge," supported the finding of a "causal link . . . . ").[2] Accordingly, the Court denies defendants' motion for summary judgment as to that part of Migliore's First Amendment claim which asserts retaliation because of his speeches and the Book.

Further, the Court finds that there are genuine disputes of material fact concerning Migliore's retaliation claim.   The parties dispute whether Dean was aware of Migliore's speeches before the SRC, whether she understood the contents of the Book, whether regional superintendent Feria "paged through" the Book and expressed displeasure with the chapter titled the "The Inherent Immorality of Bureaucracy," and generally whether Migliore's speech was a substantial or motivating factor in his demotion.   The Court therefore also denies Migliore's motion for summary judgment as to that part of Migliore's First Amendment claim which asserts retaliation because of his speeches and the Book.

2. Grievance and Complaint

Migliore also claims that he was retaliated against because of his complaint to CASA Union president Lerner, and the subsequent presentation of his grievance and complaint to regional superintendent Feria, in violation of his First Amendment rights.   Migliore does not state

_____

[2] Defendants make no argument concerning the third and final prong of the retaliation analysis, whether they would have undertaken the same action in absence of the protected conduct.   Accordingly, the Court need not address this aspect of Migliore's claim.

whether this claim is founded on his rights under the Speech Clause or the Petition Clause of the First Amendment.[3]   The Court need not resolve this ambiguity because on either ground, Migliore's claim fails as a matter of law.

Whether a public employee claims retaliation under the Speech or Petition Clause, the claim must relate to a matter of public concern.   See Borough of Duryea, Pa. v. Guarnieri, 131 S. Ct. 2488, 2500 (2011) ("If a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases.").   Migliore does not argue that his complaint and grievance before either Lerner or Feria was on a matter of public concern.   Rather, Migliore states that he went to see Lerner "about the open hostility Ms. Dean was displaying toward Mr. Migliore."   (Pl. Mot. at 19.)   The letter containing Migliore's complaint and grievance discussed the ongoing antagonism between him and Dean.   In the letter, Migliore wrote that Dean was "obviously looking for reasons she can use to justify 'writing me up' . . . . It is clear that I am working within a 'hostile working environment' and it is affecting me."   (Pl. Ex. B.)   The Court therefore concludes that Migliore was acting as an employee and addressing a matter of private concern when he spoke to and/or petitioned Lerner and Feria.   Migliore's First Amendment claim concerning his grievance and complaint is thus groundless as a matter of law.   See Guarnieri, 131 S. Ct. 2488, 2501 (2011) (holding that the right to petition "is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts"); Lucas v. City of Philadelphia, 2012 WL 464929, at *9 n.4 (E.D. Pa. Feb. 13, 2012) ("[A] suit under the First Amendment is not proper where an employer retaliates against an employee for petitioning about an ordinary workplace grievance.").

---

[3]  The First Amendment of the Constitution states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or *abridging the freedom of speech*, or of the press; or the right of the people peaceably to assemble, *and to petition the government for a redress of grievances*."   (emphasis added)

The Court grants defendants' motion for summary judgment as to that part of Migliore's First Amendment claim based on retaliation for his grievance and complaint to Lerner and Feria.

B. Denial of Due Process

Milgiore next asserts that he was denied due process when he was demoted without a hearing. (Pl. Mot. at 11.) Defendants argue that Milgiore's due process claim is precluded by the decision of the Commonwealth Court. "Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state court decisions the same preclusive effect as they would be given 'in the courts of the rendering state.'" Hitchens v. Cnty. of Montgomery, 98 F. App'x 106, 111 (3d Cir. 2004).

"Issue preclusion bars relitigation of identical issues adjudicated in a prior action against the same party or a party in privity."[4] Id. "Under Pennsylvania law, issue preclusion applies where: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action." Id. (quoting Greenleaf v. Garlock, Inc., 174 F.3d 352, 357-58 (3d Cir.1999)).

On the first prong of the test, "[i]dentity of the issue is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." Suppan v. Dadonna, 203 F.3d 228, 233 (3d Cir. 2000). "To defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be substantial." Raytech Corp. v. White, 54 F.3d 187, 191 (3d Cir. 1995) (internal

---

[4] The Court notes that claim preclusion does not apply in this case, as it requires identical parties in both actions, and there are several defendants present in this case that were not joined before the Commonwealth Court. See U.S. Bank, Nat. Ass'n v. First Am. Title Ins. Co., 2013 WL 1905110, at *3 (E.D. Pa. May 8, 2013). In addition, the Rooker-Feldman doctrine does not apply where, as here, parallel state and federal proceedings were initiated and the state court issues a decision first. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 281 (2005).

quotations omitted).   In this case, defendants argue that the relevant issues decided by the Commonwealth Court are identical to those in Migliore's due process claim before this Court. The Commonwealth Court explicitly stated that Migliore was asserting a constitutional due process claim and analyzed that claim under the familiar constitutional standard of whether Migliore had "notice and an opportunity to be heard."   <u>Migliore</u>, 2013 WL 3156533 at *3 n.3, *7. The Court concludes that the standard applied by the state court is indistinguishable from the standard applied by this Court.   Accordingly, this Court concludes that the first prong of the issue preclusion test, identity of the issues, has been satisfied.

Concerning the second prong of the test, whether a final judgment was rendered on the merits, Migliore contended that the decision of the Commonwealth Court is not final, "due to Plaintiff's pending request for reargument en banc."   (<u>Id.</u> at 2.)   The parties subsequently informed the Court that Migliore's request for reargument had been denied, but that Migliore would be filing a Petition for Allowance of Appeal to the Pennsylvania Supreme Court.   Under Pennsylvania law, "[a] judgment is deemed final for purposes of *res judicata* or collateral estoppel unless or until it is reversed on appeal."   <u>Shaffer v. Smith</u>, 673 A.2d 872, 874 (Pa. 1996). Further, "the pendency of an appeal does not affect the potential for res judicata flowing from an otherwise-valid judgment."   <u>United States v. 5 Unlabeled Boxes</u>, 572 F.3d 169, 175 (3d Cir. 2009).   "[A]llowing a pending appeal to bar the operation of collateral estoppel would frustrate the doctrine's purpose of preventing the protraction and duplication of litigation."   <u>Rutter v. Rivera</u>, 74 F. App'x 182, 187 (3d Cir. 2003).

The Commonwealth Court finally decided Migliore's due process claim on the merits, and that decision has preclusive effect regardless of the pendency of any appeal.   This Court concludes that the second prong of the issue preclusion analysis, a final decision on the merits, has

been met.

Next, the Court addresses the third and fourth prongs of the analysis: whether Migliore was a party to the state court litigation, and whether he had a full and fair opportunity to litigate the issue below. The Court finds that Migliore was a party to the proceedings in the Commonwealth Court. As to the fourth prong, Migliore contends that state courts cannot "issue a ruling which deprives [him] of his federally protected due process rights." (Joint Rep. at 3.) The Court rejects this argument. A party's disagreement with a decision does not deprive that decision of preclusive effect. See also, Wilbur Chocolate Co., Inc. v. Bakery, Confectionary & Tobacco Workers' Int'l Union, Local 464, 1988 WL 33881, at *5 (E.D. Pa. Mar. 31, 1988).

Even if the Court construes Migliore as arguing that he did not have a full and fair opportunity to litigate his federal due process claim in his state court proceedings, the result would be the same. The requirement that a party have a "full and fair opportunity to litigate," mandates that "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause . . . . " Kremer v. Chem. Const. Corp., 456 U.S. 461, 481 (1982). The Docket Sheet for the Commonwealth Court establishes that Migliore filed both an initial brief as well as a reply brief concerning his claims in that forum. In addition, the court heard oral argument on May 16, 2013. See Russo v. City of Philadelphia, 459 F. App'x 176, 179 (3d Cir. 2012) (finding full and fair opportunity to litigate where plaintiff "asserted his state court claims in pleadings and briefs filed with the Commonwealth Court, and at oral argument before that Court."). The Court thus concludes that Migliore had a full and fair opportunity to litigate his due process claim before the Commonwealth Court, and that the fourth and final prong required for issue preclusion is satisfied in this case.

All elements of issue preclusion with respect to Migliore's due process claim in this case

have been satisfied.   Thus, Migliore is precluded from arguing in this action that his due process rights were violated.   The Court grants defendants' motion for summary judgment and denies Migliore's motion for summary judgment as to this claim.   If the Commonwealth Court decision is overturned on appeal, this Court will entertain a motion for reconsideration.

C.  Municipal Liability

Defendants next argue that Migliore has not established liability on the part of the School District and the SRC.   Municipal subdivisions and agencies such as school districts and boards are treated as municipalities for purposes of 42 U.S.C. § 1983.   See C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 202 (3d Cir. 2000); Spirk v. Centennial Sch. Dist., 2005 WL 433321, at *5 (E.D. Pa. Feb. 22, 2005).   The liability of a municipality under § 1983 is governed by Monell v. Department of Social Services, 436 U.S. 658 (1978).   Under Monell, municipalities are "included among those persons to whom § 1983 applies."   Id. at 690.   Municipalities, however, cannot be found liable under the doctrine of respondeat superior for claims based on federal civil rights statutes.   Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997).   For a municipality to be found liable, "those whose edicts or acts may fairly be said to represent official policy" must adopt a "policy or custom" causing an actionable § 1983 injury.   Monell, 436 U.S. at 694; see also Board of County Comm'rs of Bryan County, 520 U.S. at 403; City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000).   A municipal "policy" may arise from the "decisions of [a municipality's] duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."   Board of County Comm'rs of Bryan County, 520 U.S. at 403-04.   A municipal "custom" is a practice that is "so widespread as to have the force of law," though the practice "has not been formally approved by an appropriate decisionmaker."   Id. at 404.

Migliore contends that the School District and SRC are liable pursuant to Monell because commissioner Dworetsky's finding of no constructive discharge amounts to "official policy." (Pl. Resp. at 20.)   Migliore describes that policy as such: "That clear and established Pennsylvania law governing teacher tenure provisions and procedures may be unilaterally abrogated by the School Reform Commission when it chooses to do so."   (Id.)   Even if the Court construes this as a claim that the SRC has a policy of violating constitutional due process rights, the Court has previously concluded that Migliore's due process claim is precluded by the decision of the Commonwealth Court.   See also Persico v. City of Jersey City, 67 F. App'x 669, 676 (3d Cir. 2003) ("Proof of a constitutional injury is a threshold requirement for a Monell claim.").   Further, Migliore makes no argument as to whether any official policy or custom caused the alleged retaliation against him in violation of his First Amendment rights, and the Court finds no evidence on the present state of the record that any such policy or custom existed.   The Court therefore grants that part of defendants' motion for summary judgment on Migliore's claims against the School District and the SRC.[5]

## V.     CONCLUSION

For the foregoing reasons, the Court denies Milgiore's motion for summary judgment, and grants in part and denies in part defendants' motion for summary judgment.   The only claims remaining in the case are Migliore's First Amendment claims concerning his speeches and Book against all individual defendants in their personal capacities.   An appropriate order follows.

---

[5] Defendants separately argue that punitive damages are not available against the School District and the SRC.   See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).   That is a correct statement of law but the Court need not reach this issue in this case in view of its ruling on the Monell issues.