IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD W. MIGLIORE, J.D.,<br>Plaintiff, | CIVIL ACTION |
| v. | |
| ROBERT L. ARCHIE, JR., ESQUIRE,<br>Chairman;<br>DENISE MCGREGOR ARMBRISTER;<br>JOSEPH A. DWORETZKY, ESQUIRE;<br>LUCY FERIA, Regional Superintendent;<br>JAMES DOUGLASS, Assistant Regional<br>Superintendent;<br>ESTELLE G. MATTHEWS, Chief Talent<br>Development Officer;<br>ANDREW ROSEN, ESQUIRE, Human<br>Resources Representative;<br>ARLENE ACKERMAN, Superintendent;<br>THE SCHOOL DISTRICT OF<br>PHILADELPHIA;<br>THE SCHOOL REFORM COMMISSION;<br>JOHNNY IRIZARRY;<br>MARY SANDRA DEAN, Principal;<br>Defendants. | NO.  11-4018 |

DuBois, J.                                                                December 16, 2014

# M E M O R A N D U M

## I.      INTRODUCTION

This case involves the free-speech rights of a former public school assistant principal, plaintiff Richard Migliore. Presently before the Court is the Motion for Entry of Judgment of defendants Robert L. Archie, Jr., Denise McGregor-Armbrister, and Johnny Irizarry, and defendant Joseph A. Dworetzky's Joinder in that Motion. The Court construes the Motion for Entry of Judgment, joined in by defendant Dworetzky, as a Motion for Reconsideration of the Court's Memorandum and Order dated August 12, 2013. For the reasons that follow, the Motion

for Reconsideration is granted, and, upon reconsideration, the Motion for Summary Judgment which was previously denied is granted with respect to plaintiff's First Amendment retaliation claim against defendants Robert L. Archie, Jr., Joseph A. Dworetzky, Denise McGregor-Armbrister, and Johnny Irizarry ("the SRC defendants").

## II.    BACKGROUND

The background of this case is set forth in detail in the Court's August 12, 2013 Memorandum and Order, denying plaintiff's Motion for Summary Judgment and granting in part and denying in part the joint Motion for Summary Judgment that was filed on behalf of all defendants in this case. See Migliore v. Ackerman, No. 11-4018, 2013 WL 4079650 (E.D. Pa. Aug. 12, 2013). The facts will be recited in this Memorandum only as necessary to address the issues presented by the SRC defendants' instant Motion for Entry of Judgment.

### A.  Relevant Employment History

In 2006, plaintiff was assigned to work as an assistant principal of Jules Mastbaum Vocational/Technical School ("Mastbaum"). Defendant Mary Sandra Dean was the principal of Mastbaum at that time. For several years prior to his assignment to Mastbaum, plaintiff was engaged in writing a book entitled "Whose School is It? The Democratic Imperative for Our Schools" ("the Book"). The Book advocates for the adoption of democratic practices in school governance and is critical of the School District of Philadelphia ("School District") and the School Reform Commission ("SRC").

Despite having allegedly been told by the assistant to Regional Superintendent Lucy Feria that he would be "committing suicide" by doing so, plaintiff addressed the SRC on two separate occasions, August 8, 2007 and August 23, 2008, concerning the contents of his

Book and his advocacy for a democratic system of governance within the School District. In his speeches, plaintiff repeatedly mentioned the Book.[1]

Plaintiff contends that, as a result of his speeches before the SRC and the Book, he experienced hostility from defendants Dean; former superintendent Dr. Arlene Ackerman; former regional superintendent Lucy Feria; former assistant regional superintendent James Douglass; former human resources employee Estelle Matthews; and employee relations deputy Andrew Rosen ("the School District defendants"). Plaintiff claims, inter alia, that at one point Dean told him he should transfer to a different school, or she would "write so much paper on you that you will lose your job by the end of the year." Plaintiff subsequently requested a transfer, but his request was denied.

Dean continued to write numerous disciplinary memoranda concerning plaintiff's job performance, including complaints of his failure to complete a task concerning textbook accounting and locker assignments, his failure to complete the distribution of Workmen's Compensation forms to staff members, and his failure to monitor weekly lesson plans. Dean also twice recommended that plaintiff be suspended without pay for multiple days, and on December 19, 2008, plaintiff was suspended for two days without pay for certain of these failures.

---

[1]     Plaintiff asserts that he provided the then-SRC commissioners with copies of the Book following his speeches to the SRC. Plaintiff, however, has not presented any evidence that defendant McGregor-Armbrister — who was appointed to the SRC in 2007 — or defendants Archie, Dworetzky, and Irizarry — who were appointed to the SRC in 2009 — were present at the above-mentioned SRC hearings or received a copy of the Book on those dates. (See Mem. Law Supp. Mot. for Entry of Judgment in Favor of Former Commissioners of the School Reform Commission, Defs. 15–16.)

### B.  Administrative Demotion by the School District Defendants

On May 29, 2009, Dean issued a disciplinary memorandum which stated that

plaintiff had been "consistently negligent in the performance of [his] duties as an assistant

principal," and recommended that he be demoted from assistant principal to teacher.

Following a series of conferences within the School District in which Dean's

recommendation of demotion was upheld, plaintiff asserts that he turned in his keys upon

Dean's request and moved all of his belongings out of his Mastbaum office. Thereafter,

plaintiff received emails from the School District's Office of Professional Staffing in which

that Office informed plaintiff that it had been "notified of [his] demotion from assistant

principal at Mastbaum High School" and advised him to select a location to continue

working as a teacher. Plaintiff responded that he did not wish to choose a teaching position

because, "[a] demotion can not [sic] take place without a vote of the School Reform

Commission" and stated that "I have not yet been demoted and do not expect to be."[2] On

July 29, 2009, plaintiff received a form titled "Assignment Introduction," which plaintiff

contended officially assigned him to a position as a teacher.

### C.  Recommendation of Demotion to the SRC

On August 14, 2009, plaintiff received a letter signed by then-superintendent Arlene

Ackerman and then-Chairman of the SRC Robert L. Archie, Jr. which summarized several

---

[2]       Section 11-1151 of the School Code provides, in relevant part, that "there shall be no
demotion of any professional employe[e] either in salary or in type of position, except as
otherwise provided in this act, without the consent of the employe[e], or, if such consent is
not received, then such demotion shall be subject to the right to a hearing before the board
of school directors and an appeal in the same manner as hereinbefore provided in the case of
the dismissal of a professional employee." 24 Pa. Cons. Stat. Ann. § 11-1151. This statute
has been interpreted to require a hearing before a demotion of a tenured employee can be
legally effectuated. See, e.g., Migliore v. Sch. Dist. of Philadelphia, No. 1663 C.D. 2012, 2013
WL 3156503, at *3–*4 (Pa. Commw. Ct. June 18, 2013), reargument denied (July 29, 2013),
appeal denied, 84 A.3d 1066 (Pa. 2014).

disciplinary memoranda issued by Dean and stated that Ackerman and Archie would "recommend to the School Reform Commission that you be demoted to the position of teacher." The letter noted that plaintiff was "entitled to request a hearing before the School Reform Commission . . ." and set August 25, 2009 as the date for such a hearing.

On August 18, 2009, plaintiff sent a letter to Francis Bielli, Assistant General Counsel for the School District, requesting a hearing and stating his intent to appeal the recommendation of his demotion. Bielli notified plaintiff that the hearing previously scheduled for August 25, 2009 would be postponed, and that he would be requesting available dates from the SRC commissioners for a future hearing. However, before a new hearing date could be scheduled, plaintiff submitted his notification of retirement on August 31, 2009. In his retirement notification, plaintiff stated that his last day of work was June 30, 2009, and that his position was assistant principal. On September 3, 2009, the Retirement Department for the School District sent plaintiff a letter to "acknowledge [his] retirement from [his] position with the School District of Philadelphia at the close of business June 30, 2009."

### D.  SRC Hearings and Procedural History

Following plaintiff's retirement, by letter dated September 14, 2009, Bielli initially informed plaintiff that a hearing before the SRC would not be held because plaintiff had waived his right to a hearing of the impending demotion when he retired from the School District. However, after plaintiff filed a "Petition to Proceed" with the SRC, the SRC granted plaintiff's request to proceed with scheduling a hearing. The SRC ultimately held hearings on May 25, 2010, September 14, 2010, September 29, 2010, and January 6, 2011. At the conclusion of the hearings, defendant Dworetzky, the former SRC Commissioner who

5

presided over the hearings, "recommended to the SRC that the SRC dismiss the matter without further hearing because [Dworetzky found that plaintiff] had not been demoted prior to his retirement and had not been constructively discharged." Because of his findings, Dworetzky did not reach the merits of the allegations concerning plaintiff's job performance or the recommendation of demotion contained in the August 14, 2009 letter signed by Ackerman and Archie. On June 15, 2011, the SRC — which at this time was comprised of, as relevant here, Dworetzky, Archie, McGregor-Armbrister, and Irizarry — voted unanimously to adopt the findings of Commissioner Dworetzky and passed a Resolution stating that plaintiff had retired from the School District effective June 30, 2009.

Plaintiff then appealed that decision to the Secretary of Education. Migliore v. Sch. Dist. of Philadelphia, 2013 WL 3156533, at *3 (Pa. Commw. Ct. June 18, 2013), reargument denied (July 29, 2013), appeal denied, 84 A.3d 1066 (Pa. 2014). "After conducting a de novo review, the Secretary, by order dated August 3, 2012, found that [plaintiff] was not demoted or constructively discharged, but rather that he had voluntarily retired. Thus, he denied [plaintiff's] appeal." Id.

On August 29, 2012, plaintiff appealed the Secretary of Education's order to the Commonwealth Court of Pennsylvania on several grounds, including "whether [his] due process rights were violated . . . . " Id. at *1. In an opinion issued on June 18, 2013, the Commonwealth Court held, in relevant part, that although plaintiff was "demoted in fact" when he was removed from his position as an assistant principal by the administrative staff without a prior SRC hearing, no state law violation had occurred because he voluntarily resigned before a hearing could be held. Id. at *4-6. In addition, that court ruled that because plaintiff was offered a hearing prior to his resignation, and because the SRC

6

eventually held hearings, "[plaintiff] was afforded due process." <u>Id.</u> at *7. The Commonwealth Court thus affirmed the order of the Secretary of Education. <u>Id.</u>

During the pendency of his proceedings in state court, plaintiff filed the instant suit in this Court on June 20, 2011 against numerous defendants on the grounds that they retaliated against him in violation of his free-speech rights, denied him due process, and failed to prevent wrongful acts against him. Plaintiff and defendants filed cross-motions for summary judgment on September 17, 2012, and October 22, 2012, respectively. By Order and Memorandum dated August 12, 2013, the Court denied plaintiff's Motion for Summary Judgment and granted in part and denied in part defendants' joint Motion for Summary Judgment. The Court dismissed plaintiff's due process and neglect to prevent claims,[3] holding that "[t]he only claims remaining in the case are [plaintiff's] First Amendment claims concerning his speeches and Book against all individual defendants in their personal capacities." <u>Migliore</u>, 2013 WL 4079650, at *12 (E.D. Pa. Aug. 12, 2013).

On October 15, 2013 and November 6, 2013, defendants Joseph A. Dworetzky and the Estate of Arlene Ackerman, respectively, moved for judgment in their favor and against plaintiff, arguing that, in light of the Court's August 12, 2013 Memorandum and Order, a reasonable juror could not find that they retaliated against plaintiff for exercising rights protected by the First Amendment. By Order dated June 17, 2014, the Court treated the Motions for Entry of Judgment as Motions for Reconsideration of the Court's August 12, 2013 Memorandum and Order, and

---

[3]     Plaintiff decided not to pursue his neglect to prevent claim under 42 U.S.C. § 1986. Accordingly, the Court did not consider that claim on the merits. With respect to plaintiff's due process claim, after concluding that "[a]ll elements of issue preclusion . . . ha[d] been satisfied," the Court gave preclusive effect to the decision of the Commonwealth Court of Pennsylvania in <u>Migliore</u>, 2013 WL 3156533 (Pa. Commw. Ct. June 18, 2013), and held that plaintiff was therefore "precluded from arguing in this action that his due process rights were violated." <u>Migliore v. Ackerman</u>, No. 11-4018, 2013 WL 4079650, at *11 (E.D. Pa. Aug. 12, 2013).

denied the Motions on the ground that they were "untimely and meritless."

Thereafter, on July 21, 2014, defendants Robert L. Archie, Jr., Denise McGregor-Armbrister, and Johnny Irizarry — all former commissioners of the SRC — filed the instant Motion for Entry of Judgment in which defendant Joseph A. Dworetzky has joined.

## III.   DISCUSSION

### A.   Preliminary Issue: Nature of the SRC Defendants' Motion

Before the Court addresses the merits of the SRC defendants' arguments, it must address the preliminary issue of which legal standard and procedural rule to apply to their Motion. Although styled as a "Motion for Entry of Judgment," the SRC defendants' Motion seeks reconsideration of the Court's Memorandum and Order dated August 12, 2013. See Favia v. Ind. Univ. of Pa., 7 F.3d 332, 338 (3d Cir. 1993) (noting that a court must "look beyond [a] motion's caption to its substance"). Thus, the Court will treat the Motion as a Motion for Reconsideration of the Court's August 12, 2013 Memorandum and Order.

Moreover, the SRC defendants incorrectly invoke Rule 54(b) as the legal authority in support of their Motion. Although there is disagreement between circuits on this issue,[4] the U.S. Court of Appeals for the Third Circuit has held that "[m]otions for reconsideration do not arise under Rule 54(b)." Osei v. La Salle Univ., 493 F. App'x 292, 293 n.1 (3d Cir. 2012). Accordingly, the Court properly construes the Motion as one "invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." Pellicano v. Blue Cross Blue Shield Ass'n, 540 F. App'x 95, 97 n.2 (3d Cir. 2013).

---

[4]      Compare Osei v. La Salle Univ., 493 F. App'x 292, 293 n.1 (3d Cir. 2012) ("Motions for reconsideration do not arise under Rule 54(b)."), with Moore v. Life Ins. Co. of N. Am., 278 F. App'x 238, 239 n.3 (4th Cir. 2008) ("The proper vehicle for Moore to have raised a motion to reconsider [an interlocutory order] was Rule 54(b) . . . ."); see also Foster III v. Westchester Fire Ins. Co., No. 09-cv-1459, 2012 WL 2402895, at *4 n.1 ("There is considerable confusion about which rule of civil procedure provides the basis for motions for reconsideration . . . .").

### B.   Timeliness of the SRC Defendants' Motion for Reconsideration

Properly treated as a Motion for Reconsideration of the Court's August 12, 2013 Memorandum and Order, it is clear that the Motion does not comport with Local Rule 7.1(g), as it was not filed within fourteen days of the Memorandum and Order at issue. See Local Rule 7.1(g) ("Motions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of the order concerned, other than those governed by Federal Rule of Civil Procedure 59(e).") However, "a district court can depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment." United States v. Eleven Vehicles, Their Equip. & Accessories, 200 F.3d 203, 215 (3d Cir. 2000).

With respect to the present Motion, the Court finds that there is a sound rationale for departing from Local Rule 7.1(g) because, as explained below, a reasonable juror could not conclude from the evidence in the record that the SRC defendants retaliated against plaintiff. The Court further finds that plaintiff will not be unfairly prejudiced by departure from Local Rule 7.1(g) because, after extensive briefing with respect to the cross-motions for summary judgment and with respect to the present Motion for Reconsideration,[5] plaintiff has failed to demonstrate the existence of a genuine dispute of material fact as to the liability of the four SRC defendants. Accordingly, the Court waives the fourteen-day deadline in Local Rule 7.1(g) and proceeds to consider the Motion for Reconsideration on the merits. See United States v. Jerry, 487 F.2d 600,

---

[5]      Following a telephone conference held on July 21, 2014, the Court established a briefing schedule with respect to the present Motion for Reconsideration and directed the parties to "address all procedural and substantive issues raised in the Motion[] including, but not limited to, evidence of moving defendants' liability." Third Amended Scheduling Order dated July 21, 2014 (Document No. 56). After that briefing schedule concluded, by Order dated October 7, 2014, the Court granted plaintiff leave to file a sur-reply memorandum in further opposition to the Motion for Reconsideration. By Order dated October 20, 2014, the Court granted defendant Dworetzky leave to file a response to that sur-reply memorandum.

605 (3d Cir. 1973) ("[S]o long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.").

### C.   Merits of the SRC Defendants' Motion for Reconsideration

#### 1.   Granting of the Motion for Reconsideration

Three situations justify granting a motion for reconsideration: (1) an intervening change in the controlling law; (2) the availability of new evidence not available when the court dismissed the prior petition; or (3) the need to correct a clear error of law or fact or to prevent "manifest injustice." Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999); Dimensional Music Publ., LLC v. Kersey, No. 05-cv-6437, 2006 WL 1983189, *1 (E.D. Pa. July 12, 2006). The party seeking reconsideration bears the burden of establishing one of these grounds. Max's Seafood Café, 176 F.3d at 677.

In their Motion, the SRC defendants do not assert that the law has changed or that new evidence has become available since the Court issued its August 12, 2013 Memorandum and Order. They argue instead that, in light of the way in which the Court framed the issues in that Memorandum and Order, judgment should be entered in their favor because there is insufficient evidence in the record from which a reasonable juror could conclude that they retaliated against plaintiff in violation of his First Amendment rights.[6]

The Court agrees with the SRC defendants and thus finds that reconsideration is necessary to correct a clear error of fact in the August 12, 2013 Memorandum and Order.

---

[6]      Dworetzky raises mostly the same arguments with respect to the present Motion that he raised in the Motion for Entry of Judgment he filed on October 15, 2013. Although the Court denied Dworetzky's October 15, 2013 Motion as "untimely and meritless" by Order dated June 17, 2014, in reviewing the issues again, the Court concludes there is merit to Dworetzky's arguments and that it is appropriate for the Court to reconsider whether there is sufficient evidence to support a retaliation claim against the SRC defendants.

Upon further review, the Court concludes that the evidence presented is insufficient to establish the liability of the SRC defendants.[7] The SRC defendants have therefore satisfied their burden of establishing a ground for reconsideration of the August 12, 2013 Memorandum and Order. Accordingly, the Motion for Reconsideration is granted.

### 2. Reconsideration of the August 12, 2013 Memorandum and Order

The Court next addresses the question of whether there is sufficient evidence from which a reasonable juror could conclude that the SRC defendants retaliated against plaintiff. Plaintiff contends that there is sufficient evidence in the record to show that the SRC defendants are liable for First Amendment retaliation because they either: (1) rubber stamped the retaliatory acts of the School District defendants, or (2) personally retaliated against him because of his speeches and the Book. Upon reconsideration, the Court disagrees.

### a. Legal Standards

### 1) Summary Judgment

In reconsidering whether the SRC defendants are entitled to summary judgment on plaintiff's First Amendment retaliation claim, the Court applies the same summary judgment

---

[7] The Court notes that at the summary judgment stage, defendants were all represented by the same attorney, Paul J. Cianci. As such, counsel filed a Motion for Summary Judgment on behalf of all defendants. In that Motion, counsel argued generally that there was "no evidence that any or all of the defendants in this case did anything adverse to [plaintiff] because of what he said or wrote to the SRC or what he wrote in his book," but did not draw any distinction between the School District defendants and the SRC defendants. (Mem. Law Supp. Defs.' Mot. Summ. J. 15.) The Court now finds reconsideration necessary to prevent the SRC defendants from being forced to remain as parties in a case in which there is no evidence of their liability. See Martinez v. Quality Value Convenience, Inc., 63 F. Supp. 2d 651, 655 (E.D. Pa. 1999), aff'd, 216 F.3d 1076 (3d Cir. 2000) (granting leave to file a dispositive motion after the applicable deadline where not doing so would "require the parties to proceed to a jury trial at which — absent introduction of evidence not disclosed in . . . more than two years of contested discovery . . . — the court might well be obliged to grant a motion for judgment as a matter of law").

standard set forth in the August 12, 2013 Memorandum and Order. See Fed. R. Civ. P. 56;

Migliore, 2013 WL 4079650, at *5 (E.D. Pa. Aug. 12, 2013); see also Franklin Prescriptions,

Inc. v. The New York Times Co., 267 F. Supp. 2d 425, 431 (E.D. Pa. 2003); Travelers

Indem. Co. v. Fantozzi By & Through Fantozzi, 825 F. Supp. 80, 83 (E.D. Pa. 1993).

### 2) First Amendment Retaliation

The Court applies the same First Amendment retaliation standard set forth in the

August 12, 2013 Memorandum and Order. See Migliore, 2013 WL 4079650, at *5–*6 (E.D.

Pa. Aug. 12, 2013).

As relevant here, in order to demonstrate the SRC defendants' liability for

retaliation, plaintiff must show that they were personally involved in the violation of his

First Amendment rights. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A

defendant in a civil rights action must have personal involvement in the alleged wrongs;

liability cannot be predicated solely on the operation of respondeat superior.") (emphasis

deleted). To prove causation, plaintiff must demonstrate that his "expressive activities were

a 'substantial' or 'motivating' factor behind the conduct engaged in by a particular

defendant in order to hold that defendant liable for violating [his] First Amendment rights."

Mitchell v. Miller, 884 F. Supp. 2d 334, 359 (W.D. Pa. 2012) (citing Monteiro v. City of

Elizabeth, 436 F.3d 397, 404 (3d Cir. 2006)); see also Schneck v. Saucon Valley Sch. Dist.,

340 F. Supp. 2d 558, 568 (E.D. Pa. 2004) (whether protected activity is "a substantial or

motivating factor in an alleged retaliatory action . . . embraces two distinct inquiries: did the

defendants take an action adverse to the public employee, and, if so, was the motivation for the

action to retaliate against the employee for the protected activity[?]") (internal quotation marks

and citation omitted). In the absence of proof of either "(1) an unusually suggestive temporal

proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern

of antagonism coupled with timing to establish a causal link," plaintiff "must show that from the evidence gleaned from the record as a whole the trier of the fact should infer causation." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (internal quotations omitted).

### b. Liability of the SRC defendants for First Amendment Retaliation

At the outset, the Court notes that plaintiff's reliance on the cat's paw doctrine[8] as a basis for holding the SRC defendants liable is misplaced. Under this doctrine, an employer can be held liable if a formal decisionmaker who lacks an unlawful motive is induced into taking an adverse employment action against an employee by a subordinate who acts with an unlawful motive but lacks decisionmaking authority. See Staub v. Proctor Hosp., 131 S. Ct. 1186 (2011); Root v. Keystone Helicopter Corp., No. 10-1457, 2011 WL 144925, at *6 (E.D. Pa. Jan. 18, 2011). In essence, plaintiff argues that the SRC defendants can be held personally liable pursuant to this doctrine, even if they lacked improper motive, because they "rubber stamped" the allegedly retaliatory acts of the School District defendants.

Plaintiff's argument fails because the cat's paw doctrine does not provide a basis for holding an individual personally liable; it serves instead as a potential basis for holding an employer liable. See Miller v. Thomas Jefferson Univ. Hosp., 565 F. App'x 88, 91 n.5 (3d Cir. 2014) (non-precedential)[9] ("In her brief, Miller's only argument directed at the

---

[8]     "As explained by the Supreme Court in Staub [v. Proctor Hosp., 131 S. Ct. 1186 (2011)], the term 'cat's paw' derives from one of Aesop's fables. In the fable, a mischievous monkey compliments his company, a cat, on his abilities and suggests that the cat steal the chestnuts that they were watching roast in a fire. The naïve cat, flush with the monkey's flattery, readily obliges. The cat proceeds to pluck the chestnuts from the flames, singeing his paws in the process, while the monkey snatches the chestnuts away." McKenna v. City of Philadelphia, 649 F.3d 171, 177 n.6 (3d Cir. 2011).

[9]     Although not binding on the Court, this Court finds the Miller decision instructive.

retaliation claim against Feil and Staffieri is included in a footnote where she argues the District Court ignored the 'cat's paw' theory which, in her view, would establish individual liability for Feil and Staffieri. . . . Miller misapprehends this theory. Rather than providing for individual liability, the cat's paw theory allows actions of individuals to be attributed to the employer.") (citation omitted); Hilburn v. New Jersey Dep't of Corr., No. 7-6064, 2012 WL 3133890, at *4 (D.N.J. July 31, 2012) ("[T]he cat's paw theory is about holding an employer liable for acts of employment discrimination committed by an employee who lacked decision-making authority.") (emphasis in original). Because the SRC defendants were not plaintiff's "employer," and because plaintiff is seeking to hold them liable in their individual capacities, the cat's paw doctrine is inapplicable. To the extent that plaintiff is asking the Court to extend the cat's paw doctrine to apply in such a situation, the Court declines to do so.

Having rejected plaintiff's cat's paw argument, the question is now whether there is sufficient evidence from which a reasonable juror could conclude that the SRC defendants personally retaliated against plaintiff because of his protected activity, i.e. his speeches before the SRC and the Book. For the reasons stated below, upon reconsideration, the Court answers that question in the negative as to the four SRC defendants.[10]

### 1) Robert L. Archie, Jr.

Plaintiff contends that Archie "took a lead role in the ongoing antagonism against" him. Plaintiff asserts that this is evidenced by an August 14, 2009 letter he received from Archie and then-Superintendent Arlene Ackerman in which he was informed that they were going to

---

[10]     The Court notes that plaintiff did not depose any of the four SRC defendants during discovery. (See Reply of Defs. Former Commissioners of the School Reform Commission Supp. Mot. for Entry of J. 6.)

14

"recommend to the School Reform Commission that [he] be demoted to the position of teacher." According to plaintiff, this statement of charges was "bogus" and demonstrates that Archie possessed "strong animus" towards him.

The Court rejects plaintiff's argument. Archie signed the letter, which was on SRC letterhead, in his official capacity as Chairman of the SRC, and the letter did not purport to effectuate an illegal demotion of plaintiff. To the contrary, as contemplated by Section 11-1127 of the School Code,[11] the letter stated that plaintiff was being "recommended" for demotion, it laid out the basis for the recommendation, and it notified plaintiff of his right to contest the recommendation at a SRC hearing.[12] Moreover, plaintiff has not pointed to any evidence to show that Archie, who was appointed to the SRC in 2009, was aware of plaintiff's speeches before the SRC in 2007 and 2008 or plaintiff's Book when he engaged in allegedly retaliatory conduct. In light of this, there is simply no evidence in the record from which a reasonable juror could infer

---

[11]     Section 11-1127 of the School Code provides, in relevant part, that "[b]efore any professional employe[e] having attained a status of permanent tenure is dismissed by the board of school directors, such board of school directors shall furnish such professional employe[e] with a detailed written statement of the charges upon which his or her proposed dismissal is based and shall conduct a hearing. A written notice signed by the president and attested by the secretary of the board of school directors shall be forwarded by registered mail to the professional employe[e] setting forth the time and place when and where such professional employe[e] will be given an opportunity to be heard either in person or by counsel, or both, before the board of school directors and setting forth a detailed statement of the charges. . . . Any such hearing may be postponed, continued or adjourned." 24 Pa. Cons. Stat. Ann. § 11-1127. This statute also applies to demotions. See id. § 11-1151.

[12]     Plaintiff's argument that Archie's retaliatory intent can be gleaned from the letter because the letter failed to comply with Section 11-1127 of the School Code is unavailing. Contrary to plaintiff's assertion, Section 11-1127 does not require formal board action memorialized by a resolution recorded in its minutes in order to institute charges against a tenured employee. Clark v. Colonial Sch. Dist., 387 A.2d 1027, 1029 (Pa. Commw. Ct. 1978) ("[S]ection [11-1127] of the [School] Code . . . clearly does not require formal school board action authorizing the initiation of charges and the sending of notice of hearing.").

that Archie's motivation in sending the August 14, 2009 letter to plaintiff was to retaliate against him for his protected activity, i.e. his speeches and the Book.

Plaintiff's other assertions are similarly insufficient to demonstrate a genuine dispute of material fact as to whether plaintiff's protected activity played a role in Archie's allegedly retaliatory conduct. For instance, plaintiff argues that Archie knew about and failed to rescind his illegal administrative demotion and that this constitutes circumstantial evidence of retaliatory intent. However, plaintiff's argument fails because he has not presented any evidence to demonstrate that Archie knew about the administrative demotion or that Archie's actions were linked to plaintiff's protected activity. Similarly, to the extent that plaintiff argues that Archie "resigned from the SRC not long after being accused of unethical conflict" and that this demonstrates his retaliatory intent against plaintiff, the Court rejects that argument. Plaintiff does not argue that Archie was accused of any unethical conduct directed towards him, and even if plaintiff did make such an argument, he has still failed to present any evidence that would establish that plaintiff's protected activity was a factor considered by Archie when he engaged in allegedly retaliatory conduct. See Kovac v. Pennsylvania Tpk. Comm'n, 444 F. App'x 588, 590–91 (3d Cir. 2011).

In short, taking all of the evidence in a light most favorable to plaintiff, the Court concludes that plaintiff has not come forward with anything other than conjecture to support his contention that his speeches and the Book played a role in Archie's allegedly retaliatory conduct. See Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Therefore, the Court grants the Motion for Summary Judgment with respect to plaintiff's First Amendment retaliation claim against Archie.

### 2)  Joseph A. Dworetzky

Plaintiff contends that Dworetzky can be held liable for retaliation based on his conduct in presiding over the SRC hearings that were held following plaintiff's demotion and retirement. Plaintiff asserts that a causal connection between his protected activity and Dworetzky's allegedly retaliatory conduct is evidenced by, <u>inter alia</u>: Dworetzky's failure to disclose a potential conflict of interest;[13] Dworetzky's ultimate issuance of a "knowingly false" ruling that plaintiff had not been demoted in order to "eliminate any possibility of [plaintiff] ever having a hearing on the validity of the charges against him, and to prevent reinstatement to the position from which he had been illegally demoted"; and a June 19, 2014 SRC Resolution that authorizes the School District of Philadelphia to retain Hangley Aronchick Segal Pudlin & Schiller, the law firm at which Dworetzky is a shareholder, as outside counsel in legal matters. The Court rejects plaintiff's arguments because, based on the evidence presented, the Court concludes that a reasonable inference cannot be drawn that Dworetzky, who was appointed to the SRC in 2009, was motivated, even in part, by a "desire to retaliate against . . . plaintiff for engaging in protected activity." <u>Kovac</u>, 444 F. App'x at 591–92.

For instance, although plaintiff argues that Dworetzky's "anger at [plaintiff] increased" as a result of the revelation of a potential conflict of interest during the SRC hearings and plaintiff's ensuing request for Dworetzky's recusal, plaintiff has not come forward with any evidence to support that assertion. Similarly, even though Dworetzky may

---

[13]    During the SRC hearings, plaintiff became aware of the fact that Dworetzky had represented the Pennsylvania Department of Education and the Secretary of Education in his private law practice. For that reason, plaintiff asked that Dworetzky recuse himself from the matter. After providing the parties with an opportunity to argue the issue, Dworetzky denied plaintiff's request. (<u>See</u> Pl.'s Sur-Reply Mem. Law Opp'n to Former Commissioner Joseph A. Dworetzky's Reply in Further Supp. of Mot. for Entry of J. in Favor of the Former Commissioners of the School Reform Commission 11–12 & Ex. E.)

have erroneously concluded after the hearings that plaintiff had not been demoted,[14] it does not follow that Dworetzky arrived at that erroneous conclusion because of a desire to retaliate against plaintiff. Moreover, Dworetzky's conclusion is not so plainly wrong that it invites a reasonable inference of retaliatory animus. Although plaintiff has come forward with evidence to show that Dworetzky was aware of plaintiff's Book, a reasonable inference cannot be drawn from that evidence alone that plaintiff's protected activity was a factor in Dworetzky's allegedly retaliatory conduct. See Kovac, 444 F. App'x at 590–91. Plaintiff must do more than speculate as to Dworetzky's motivation, which he has failed to do.

Likewise, plaintiff's argument that the June 19, 2014 SRC Resolution demonstrates retaliatory intent is unavailing. First, this Resolution is not probative of Dworetzky's state of mind four years earlier when he presided over plaintiff's SRC hearings. See Mitchell, 884 F. Supp. 2d at 359 ("[T]he issue of causation pertaining to a First Amendment claim against a particular defendant generally turns on his or her 'specific intent' at the time of the alleged retaliatory action.") (emphasis added) (citation omitted). A reasonable juror could not conclude from the Resolution that Dworetzky ruled against plaintiff in the SRC hearings because he expected his law firm to be rewarded by a wholly-different SRC four years

---

[14]     In his Memorandum and Recommended Opinion to the SRC dated May 16, 2011, Dworetzky based his finding that plaintiff had not been demoted on the fact that plaintiff was paid in retirement at a rate consistent with him having retired as an assistant principal rather than as a teacher. (App. Exs. Supp. Pl.'s Mot. Summ. J., Ex. HH, at 112–116.) The Commonwealth Court of Pennsylvania rejected that conclusion on appeal, holding instead that plaintiff was "demoted in fact" when his supervisors removed him from his position as an assistant principal and reassigned him to the position of a teacher prior to an SRC hearing on the matter. Migliore, 2013 WL 3156533, at *3–5 (Pa. Commw. Ct. June 18, 2013).

later.[15] Moreover, even if a reasonable juror could conclude from the Resolution that Dworetzky was "intentionally protective of the School District," and that "his decisions were the product of an allegiance with the School District," this does not establish the requisite causal link between Dworetzky's actions and plaintiff's protected activity, i.e. the speeches and the Book. Motivation to curry favor with the School District is not the same as motivation to retaliate against plaintiff because of his protected activity. Considered in light of all of plaintiff's evidence, the Resolution is therefore not probative of whether plaintiff's protected activity played a role in Dworetzky's allegedly retaliatory conduct.

Thus, the Court concludes that plaintiff's evidence, when considered in its totality and in a light most favorable to plaintiff, could not lead a reasonable juror to conclude that Dworetzky retaliated against plaintiff because of his speeches and the Book. Accordingly, the Court grants the Motion for Summary Judgment with respect to plaintiff's First Amendment retaliation claim against Dworetzky.

### 3) Denise McGregor-Armbrister and Johnny Irizarry

Plaintiff argues that McGregor-Armbrister and Irizarry can both be held liable for retaliation based on their "intentional inaction," i.e. their "fail[ure] to use any independent thought or investigation" in "rubber stamp[ing] what had been done to [plaintiff] . . . .[,]" presumably by voting in favor of adopting Dworetzky's proposed findings and conclusions of law following the SRC hearings. Plaintiff's argument fails, however, because not only has he failed to present any evidence to show that McGregor-Armbrister and Irizarry "rubber stamped"

---

15      As Dworetzky notes, there has been considerable turnover in the SRC since 2010. (See Former Commissioner Joseph A. Dworetzky's Resp. to Pl.'s Sur-Reply 3 n.1.) Between 2010 and 2014, two chairmen of the SRC have left their positions and been replaced, and the SRC is now comprised of entirely different appointees in 2014 than it was in 2010. (Id.) Plaintiff has not presented any evidence to show that Dworetzky planned or anticipated that his law firm would be rewarded four years later for actions Dworetzky took at plaintiff's SRC hearings.

anything, even if he did point to such evidence, there is insufficient evidence elsewhere in the record to establish a link between their conduct and plaintiff's protected activity.[16] With respect to McGregor-Armbrister, the record is devoid of evidence that she was aware of plaintiff's speeches and his Book at the time of her allegedly retaliatory conduct. With respect to Irizarry, although there is evidence that plaintiff provided Irizarry with a copy of his book in 2009, a reasonable inference cannot be drawn from this alone that plaintiff's protected activity was a factor in Irizarry's allegedly retaliatory conduct. See Kovac, 444 F. App'x at 590–91. In light of this, a reasonable juror could not infer from the fact that McGregor-Armbrister and Irizarry voted in favor of adopting Dworetzky's recommended findings that plaintiff's protected activity played a role in their conduct. In the absence of other evidence, such an inference would be based solely upon conjecture, which is insufficient to demonstrate the existence of a genuine dispute of material fact for trial. See Fireman's Ins. Co., 676 F.2d at 969.

The Court also rejects plaintiff's argument that the SRC's adoption of Dworetzky's recommendation was done in procedural violation of the School Code and that this

---

[16]     Plaintiff attached to his Memorandum of Law in Opposition to defendants' Motion for Reconsideration an affidavit dated July 29, 2014 from Lisa Haver, a former teacher, in which she avers, inter alia, that she generally attends SRC meetings and that members of the SRC "most often . . . rubber stamp votes on employee resolutions," "without input by advocates," and that they do so in "one single mass resolution." The affidavit was not referenced in plaintiff's Memoranda of Law and, in any event, it is insufficient to support plaintiff's contention that McGregor-Armbrister and Irizarry "rubber-stamped" Dworetzky's decision. Moreover, plaintiff did not submit this affidavit at the summary judgment stage and has not argued that it is newly discovered evidence. The Court therefore declines to consider it. See Pavlik v. Lane Ltd./Tobacco Exporters Int'l, 135 F.3d 876, 882 (3d Cir. 1998) (holding that when evidence was not part of the record at the summary judgment stage and is not "newly discovered," "a party may not submit that evidence in support of a motion to reconsider a grant of summary judgment"); A.K. Stamping Co. v. Instrument Specialties Co., 106 F. Supp. 2d 627, 665 (D.N.J. 2000) ("Courts routinely exclude evidence raised for the first time on a reconsideration motion absent an adequate explanation as to why the proffering party did not exercise due diligence to obtain the evidence for the initial motion.").

demonstrates retaliatory intent.[17] This statute is inapplicable because at the time of the SRC

hearings, the SRC was no longer in a position to legally effectuate a demotion or reinstate

plaintiff to the position of an assistant principal since plaintiff "aborted the process" when

he voluntarily retired from his position before the SRC could hold a hearing to resolve the

demotion issue. Migliore, 2013 WL 3156533, at *4–*5 (Pa. Commw. Ct. June 18, 2013); see

also Dotterer v. Sch. Dist. of City of Allentown, 92 A.3d 875, 884–85 (Pa. Commw. Ct.

2014) ("[A] professional employee waives the right to further relief on an underlying School

Code issue by voluntarily leaving employment.").

 In considering all of the evidence in a light most favorable to plaintiff, the Court

determines that a reasonable juror could not conclude that McGregor-Armbrister and Irizarry

retaliated against plaintiff because of his speeches and the Book. Accordingly, the Court grants

the Motion for Summary Judgment with respect to plaintiff's First Amendment retaliation

claim against McGregor-Armbrister and Irizarry.

## IV. CONCLUSION

 For the foregoing reasons, the SRC defendants' Motion for Entry of Judgment, treated as

a Motion for Reconsideration of the August 12, 2013 Memorandum and Order, is granted. The

Court, having not fully considered in that Memorandum and Order whether there was sufficient

evidence to support a First Amendment retaliation claim against defendants Robert L. Archie,

Jr., Joseph A. Dworetzky, Denise McGregor-Armbrister, and Johnny Irizarry, now addresses

---

[17] Section 11-1129 of the School Code provides, in relevant part, that "[a]fter fully
hearing the charges or complaints and hearing all witnesses produced by the board and the
person against whom the charges are pending, and after full, impartial and unbiased
consideration thereof, the board of school directors shall by a two-thirds vote of all the
members thereof, to be recorded by roll call, determine whether such charges or complaints
have been sustained and whether the evidence substantiates such charges and complaints,
and if so determined shall discharge such professional employe[e]. . . ."

that issue and grants the Motion of those defendants for summary judgment on plaintiff's First Amendment retaliation claim concerning his speeches and the Book.

An appropriate order follows.