IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD W. MIGLIORE, J.D., Plaintiff, | CIVIL ACTION |
| v. | |
| LUCY FERIA, Regional Superintendent, ANTHONY ANTOGNOLI, Personal Representative of the Estate of Arlene Ackerman, JAMES DOUGLASS, Assistant Regional Superintendent, ESTELLE G. MATTHEWS, Chief Talent Development Officer, ANDREW ROSEN, ESQUIRE, Human Resources Representative, THE SCHOOL DISTRICT OF PHILADELPHIA, and MARY SANDRA DEAN, Principal, Defendants. | NO.  11-4018 |

DuBois, J.                                              November 16, 2015

# M E M O R A N D U M

## I.    INTRODUCTION

This is a First Amendment retaliation case brought by plaintiff Richard Migliore against the School District of Philadelphia (the "School District") and various School District employees in their individual capacities. The Court held a final pretrial conference in this case in two parts, on October 15 and November 5, 2015. Following the first part of the final pretrial conference, the Court ordered the parties to submit trial briefs addressing (1) any and all issues relating to constructive discharge and its effect on the compensatory damages claims brought under 42 U.S.C. § 1983, and (2) whether or not the Court's Memorandum and Order of August 12, 2013, disposed of all *Monell* claims against the School District.

This Memorandum sets forth the Court's conclusions on both of these issues based upon consideration of the parties' statements at both parts of the final pretrial conference and the trial briefs. The Court concludes that Migliore is not required to prove that he was constructively discharged to recover economic damages and therefore that Migliore is not precluded by the 2013 decision of the Pennsylvania Commonwealth Court from seeking damages for lost wages and retirement benefits. To recover such damages, Migliore must prove that the alleged violation was the proximate cause of his lost wages and retirement benefits. The Court also determines that the Memorandum and Order of August 12, 2013, dismissed all claims for municipal liability against the School District.

## II.    BACKGROUND

The facts of this case are set forth at length in the Court's Memorandum and Order of August 12, 2013, denying plaintiff's Motion for Summary Judgment and granting in part and denying in part defendants' Motion for Summary Judgment. This Memorandum recites only the facts and procedural history relevant to the issues of constructive discharge and municipal liability.

### 1.  Migliore's Employment with the School District

Migliore worked for the School District as a teacher beginning in 1975. In 1993, Migliore was promoted to the position of assistant principal and assigned to Furness High School. In 2006, Migliore was assigned to Jules Mastbaum Vocational/Technical School ("Mastbaum"). During the time Migliore was at Mastbaum, defendant Mary Sandra Dean was the school's principal and Migliore's direct supervisor.

### 2.   Migliore's Book and Addresses to the School Reform Commission

While employed by the School District, over a period of several years, Migliore wrote a book entitled "Whose School is It? The Democratic Imperative for Our Schools." Migliore's book was published in 2007. Prior to publication, Migliore distributed drafts of the manuscript and discussed his book with other School District employees. The extent of each defendant's awareness of the book and its contents is disputed.

Migliore addressed the Philadelphia School Reform Commission ("SRC") twice regarding the contents of his book. On August 8, 2007, before the book was published, Migliore addressed the SRC concerning his theories regarding school governance and the contents of the book, and provided the SRC Commissioners with draft copies. More than a year later, on August 23, 2008, after the book was published, Migliore again addressed the SRC on similar issues and referred to his book repeatedly. The extent of each defendant's awareness of the SRC addresses and their contents is disputed.

### 3.   Discipline, Recommendation of Demotion, and Demotion

Beginning in the 2007-2008 school year and continuing through the 2008-2009 school year, Dean wrote a series of disciplinary memoranda regarding Migliore's job performance.  In a memorandum dated May 29, 2009, Dean recommended that Migliore be demoted from his position as an assistant principal because Migliore had been "consistently negligent in the performance of [his] duties as an assistant principal." This recommendation was the subject of subsequent conferences within the School District, at which defendants James Douglass and Lucy Feria participated. Ultimately, on August 14, 2009, Migliore received a letter signed by then-Superintendent of the School District Arlene Ackerman and SRC Chairman Robert Archie recommending to the SRC that Migliore be demoted.

Prior to the final recommendation letter signed by Ackerman and Archie and prior to any hearing before the SRC regarding the recommended demotion, on July 24, 2009, Migliore received a letter from the School District's Office of Professional Staffing, which stated that the Office had been "notified of your demotion from Assistant Principal at Mastbaum High School." Migliore also received an "Assignment Introduction" form dated July 23, 2009, which stated that he was reassigned by "Administrative Transfer" from Mastbaum to "non-public."

Migliore notified the School District of his intent to appeal the recommendation of demotion. A hearing was scheduled before the SRC for August 25, 2009. This hearing was then postponed by the School District to a to-be-determined date during the 2009-2010 school year. On August 31, 2009, Migliore submitted a notification of retirement, which specified his last day of work as June 30, 2009.

### 4.   Migliore's Administrative Appeals and State Court Appeal

Migliore appealed the recommendation of demotion to the SRC. SRC Commissioner Joseph Dworetzky held hearings in Migliore's case on May 25, 2010, September 14, 2010, September 29, 2010, and January 6, 2011. At the outset of the hearings, Dworetzky determined that Migliore's rights under the state tenure law terminated at retirement, unless Migliore could establish constructive discharge. At the conclusion of the hearings, Dworetzky "recommended to the SRC that the SRC dismiss the matter without further hearing because Migliore had not been demoted prior to his retirement and had not been constructively discharged." Because of this finding, the Commissioner did not address in his recommendation the merits of the allegations concerning Migliore's job performance or the recommendation of demotion contained in the August 14, 2009, letter signed by Ackerman and Archie.

In an opinion issued May 16, 2011, Dworetzky reached two conclusions. First, Dworetzky concluded that Migliore was not constructively discharged. Dworetzky applied the legal test stated in *Goss v. Exxon Office Systems*, 747 F.2d 885 (3d Cir. 1984), and found that a reasonable person in Migliore's position would not have believed "his circumstances were so adverse that he had no choice but to resign." Second, Dworetzky found that the assignment of Migliore to a position as a teacher was not a demotion under the Pennsylvania School Code because Migliore's salary was never reduced below the assistant principal rate.

On June 15, 2011, the SRC voted unanimously to adopt the findings of Commissioner Dworetzky and passed a Resolution stating that Migliore had retired from the School District effective June 30, 2009.

Following the SRC's adoption of Dworetzky's opinion, Migliore appealed to the Pennsylvania Secretary of Education. The Secretary of Education affirmed Dworetzky's second conclusion, that Migliore was not demoted, but on other grounds. The Secretary concluded that the School Code gave the School District 15 days to cure procedural defects in demotion and that "the District received notice of Mr. Migliore's retirement on September 2, 2009–within fifteen (15) days of requesting a hearing before the SRC regarding the recommended demotion. Mr. Migliore's retirement from the District prevented the SRC from taking any action to cure the alleged administrative demotion about which Mr. Migliore complains." In addition, the Secretary affirmed Dworetzky's conclusion on constructive discharge, applying the test utilized in *Pennsylvania Labor Relations Board v. Sand's Restaurant Corporation*, 240 A.2d, 801, 803 (Pa. 1968), and citing *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004).

Migliore appealed the Secretary of Education's decision to the Pennsylvania Commonwealth Court. *See Migliore v. School District of Phila.*, 1663 C.D. 2012, 2013 WL

3156533 (Pa. Commw. Ct. June 18, 2013). On appeal, the Commonwealth Court addressed, *inter alia*, whether Migliore was demoted, whether the demotion violated the Pennsylvania School Code, and whether Migliore was constructively discharged. The Commonwealth Court reversed the Secretary's decision as to the first two issues and found that Migliore was demoted and that the demotion violated Pennsylvania tenure law. The Commonwealth Court also reviewed the Secretary's decision that Migliore voluntarily retired and was not constructively discharged and concluded that this decision was supported by substantial evidence.

### 5. Proceedings in this Court

After the SRC's adoption of Dworetzky's recommendation but while the state court appeal was pending, on June 20, 2011, Migliore filed suit in this Court against the remaining defendants and others—including the individual SRC commissioners who voted on the June 15, 2011 resolution—asserting due process and First Amendment claims. In ruling on the parties' cross motions for summary judgment, this Court, in a Memorandum and Order dated August 12, 2013, granted in part defendants' motion for summary judgment as to some of Migliore's claims and denied Migliore's motion for summary judgment. *Migliore v. Ackerman*, No. 11-4018, 2013 WL 4079650 (E.D. Pa. Aug. 12, 2013). The Court granted the individual defendants' motion for summary judgment as to Migliore's neglect to prevent claims, his due process claims, and all of his First Amendment claims based on conduct other than his book and his SRC addresses. The Court also granted defendants' motion for summary judgment on all claims against the SRC and the School District. The Court denied defendants' motion for summary judgment as to Migliore's First Amendment claims based on his book and the SRC addresses against the individual defendants in their individual capacities.

6

The Court issued three subsequent Memoranda and Orders reconsidering the August 12, 2013, Memorandum and Order. *Migliore v. Feria*, No. 11-4018, 2015 WL 5582660 (E.D. Pa. Sept. 21, 2015); *Migliore v. Archie*, No. 11-4018, 2014 WL 7177368 (E.D. Pa. Dec. 16, 2014); *Migliore v. Archie*, No. 11-4018, 2014 WL 2738222 (E.D. Pa. Jun. 17, 2014). Of relevance here, in the Memorandum and Order dated December 16, 2014, the Court vacated in part the August 12, 2013, Order and granted defendants' motion for summary judgment as to all claims against the School Reform Commissioners in their individual capacities.

Following submission of trial documents by both parties, the Court held the first part of a final pretrial conference on October 15, 2015. By Order of that same date, the Court directed the parties to submit memoranda of law on all issues relating to (1) constructive discharge and its effect on Migliore's claims for compensatory damages in this case, and (2) any remaining claims of municipal liability against the School District in light of the Court's August 12, 2013, Memorandum and Order. Following submission of these memoranda of law and the second part of the final pretrial conference on November 5, 2015, these issues are ripe for resolution at this time. For the reasons that follow, the Court concludes that (1) Migliore is not required to prove constructive discharge to recover economic damages in this case and that the Commonwealth Court's 2013 decision does not preclude Migliore from seeking lost wages and retirement benefits, and (2) there are no remaining claims for municipal liability against the School District.

## III.    DISCUSSION

### 1.    Constructive Discharge and Economic Damages

Defendants argue that the Commonwealth Court's 2013 decision that Migliore was not constructively discharged precludes Migliore from seeking damages for lost wages and retirement benefits in this case. This Court gives the same preclusive effect to a state court

judgment as that judgment would have in state court. *Greenleaf v. Garlock, Inc.*, 174 F.3d 352,

357 (3d Cir. 1999). Under Pennsylvania law, issue preclusion applies where: (1) the issue

decided in the prior adjudication was identical to the one presented in the later action; (2) there

was a final judgment on the merits; (3) the party against whom issue preclusion is asserted was a

party or in privity with a party to the prior action; and (4) the party against whom issue

preclusion is asserted had a full and fair opportunity to litigate the issue in the prior action. *Id.* at

357-58. The Court concludes that the issue in this case is not identical to the one adjudicated by

the Commonwealth Court because under § 1983 Migliore need not prove constructive discharge

to recover economic damages for retaliation by School District employees that violated his First

Amendment rights. Instead, a First Amendment retaliation claim brought pursuant to § 1983

requires Migliore to prove only that the retaliation was the proximate cause of the alleged

damages. On this issue there is a genuine dispute of material fact as to whether Migliore's

retirement was a subsequent intervening act that would cut off his economic damages.

At the outset, the Court must identify the issue addressed by the Commonwealth Court.

On review of the Secretary of Education's prior decision, the Commonwealth Court affirmed the

Secretary's determination that a reasonable person in Migliore's position would not have felt

conditions were so intolerable as to compel him to resign. The Secretary of Education applied the

standard from *Pennsylvania Labor Relations Board v. Sand's Restaurant Corporation*, 240 A.2d

801, 803 (Pa. 1968), a case brought under the Labor Relations Act: "A constructive discharge

occurs only where the employer makes working conditions so intolerable that the employee is

forced to resign." In addition, the Secretary relied on the Supreme Court's decision in *Suders*,

542 U.S. at 129, a Title VII employment litigation case.

In this case, Migliore is a municipal employee bringing a claim for retaliation in violation of his First Amendment rights against his supervisors. Such a claim arises under § 1983, and not under Title VII. *See, e.g., Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1079 (3d Cir. 1990). To establish a claim for First Amendment retaliation, the plaintiff must show (1) that he engaged in protected activity, (2) that his employer or supervisor engaged in adverse action against him, and (3) that the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Springer v. Henry*, 435 F.3d 268, 275 (3d Cir. 2006). The first element is a question of law for the Court and the second and third element are questions of fact for the jury. *Id.* In this case, the Court has already held that Migliore engaged in protected activity when he made two speeches to the SRC and when he published and distributed copies of his book.

The adverse action in this case is the discipline imposed on Migliore by Dean, the subsequent recommendations to demote Migliore, and the demotion in fact, which violated the Pennsylvania School Code.[1] Adverse action in First Amendment retaliation brought under § 1983 "need not be great in order to be actionable, but it must be more than de minimis." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). The adverse action need not reach the level of a constructive discharge[2] and need only be "conduct sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee*, 436 F.3d at 170.

As the Court concluded in the August 12, 2013, Memorandum, there is a genuine issue of material fact as to whether the discipline, the recommended demotion, and the demotion in fact

---

[1] The parties have agreed that Migliore was demoted in June 2009. As explained below, this demotion violated the Pennsylvania School Code and the Court will so instruct the jury.

[2] As some courts have concluded, a constructive discharge is more than de minimis and may be the adverse action in a First Amendment retaliation case. *Hill v. Borough of Kutztown*, 455 F.3d 225, 243 (3d Cir. 2006); *see also Schneck v. Saucon Valley Sch. Dist.*, 340 F. Supp. 2d 558, 579-80 (E.D. Pa. 2004) ("I see no reason why constructive discharge should not be an independent actionable form of retaliation in this context.").

in violation of the School Code would deter a person of ordinary firmness from exercising his First Amendment rights. The Court therefore denied defendants' motion for summary judgment on this issue. Migliore has presented sufficient evidence to go to the jury on the second requirement of liability based on the disciplinary action, the recommended demotion, and the demotion in fact in violation of the tenure law, not based on constructive discharge.[3] Accordingly, the Commonwealth Court's decision is irrelevant to the liability determination in this case.

If plaintiff succeeds in establishing liability at trial, damages in a § 1983 action are governed by tort principles. *Carey v. Piphus*, 435 U.S. 247, 258 (1978). Generally, the Court should look to the most closely "analogous branch of the common law torts" of the state in which the court sits to determine the rule of damages. *Id.* The plaintiff "must demonstrate that the defendant's actions were the proximate cause of the violation of his federally protected right." *Rivas v. City of Passaic*, 365 F.3d 181, 193 (3d Cir. 2004); *see also* Third Circuit Model Civil Jury Instructions 4.8.1 Comment ("The requirement is broadly equivalent to the tort law's concept of proximate causation.").

---

[3] To establish liability, Migliore must also show by a preponderance of the evidence that the protected activity was a "substantial or motivating factor" in the adverse action. Migliore first must show that each defendant was aware of the protected conduct. *Ambrose v. Township of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002). Then, "[t]o establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link . . . . In the absence of that proof plaintiff must show (3) that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Defendants can prevail on the causation issue if they persuade a jury that they have established a "same decision" affirmative defense, that defendants "would have taken the same action absent the protected activity." *Fultz v. Dunn*, 165 F.3d 215, 218 (3d Cir. 1998). Defendants have the burden of proof with respect to that affirmative defense. There remain genuine disputes of material fact as to causation and the same decision affirmative defense.

Because § 1983 imports tort remedies, a plaintiff may recover compensatory damages, which may include "out of pocket losses." *Memphis Community School District v. Stachura*, 477 U.S. 299, 306 (1986). These losses can include salary lost due to the adverse action. *See Squire v. Bonser*, 54 F.3d 168, 171-72 (3d Cir. 1995) (discussing availability of "make-whole relief" in a First Amendment retaliation claim). It is clear that in "wrongful discharge" cases brought under § 1983 that the wrongfully discharged employee has the right to the equitable remedy of reinstatement or, if reinstatement is not appropriate, to lost wages. *Id.* This right to compensation for lost wages under § 1983 arises from tort law. *Id.* Because of this, the Court of Appeals explained, "there may not be absolute congruence between the equitable remedies long accepted under Title VII and those conventional under § 1983 . . . ." *Id.*

The question in this case is whether, in order to recover lost wages, plaintiff must establish not only that his retirement was caused by the alleged constitutional violation, but that it occurred under circumstances that would constitute a constructive discharge. Judge Simandle considered this issue in the context of a § 1983 employment discrimination action. *Glass v. Snellbaker*. No. 05-1971, 2008 WL 4371760 (D.N.J. Sept. 17, 2008). In that case, the court instructed the jury as follows:

> Plaintiff has the burden to show that his retirement was involuntary and was a product of the unlawful transfer and subsequent adverse treatment. If his retirement was voluntary, then he has not demonstrated any loss of wages or benefits. If on the other hand you are satisfied that his retirement was caused by the adverse employment action, then you must determine the amount of his past lost wages and benefits . . . and also whether he is reasonably certain to suffer such loss of wages and benefits in the future.

*Id.* at *13. The court explained, "no party has explained to the Court what legal basis it would have for denying the jury the ability to determine whether lost wages and benefits were consequential [sic] damages properly compensating plaintiff for the harm inflicted on him by

defendants." *Id.* at *13. In addition, the court noted, "defendants have pointed the Court to no case law discussing the availability of lost wages to plaintiffs suing under 42 U.S.C. § 1983 who do not make or prove constructive discharge claims." *Id.* at *15.

In a recent case involving another First Amendment retaliation claim against the Philadelphia School District, Judge Sánchez adopted the same reasoning as Judge Simandle and concluded that, because First Amendment retaliation claims arise under § 1983 rather than Title VII, a constructive discharge analysis is not required. *Dougherty v. Sch. Dist. of Phila.*, No. 12-1001, 2015 WL 2365600 (E.D. Pa. May 18, 2015). The court cited *Gurmankin v. Costanzo*, 626 F.2d 1115, 1122-23 (3d Cir. 1980), for the proposition that there is not "parity in remedy between Title VII cases and all cases brought under [§ 1983]," and therefore that constructive discharge need not be proven for economic damages to be available. *Id.* at *5. The court concluded that there was "no reason to import Title VII precedent into the § 1983 context when no § 1983 caselaw affirmatively suggests the necessity of pleading actual or constructive discharge or having the jury find the same before compensatory damages are available in a First Amendment retaliation action." *Id.* at *6.

Because of the key differences between § 1983, which provides a tort remedy for violations of plaintiff's constitutional rights, and Title VII, which seeks to comprehensively remedy discrimination in employment, the Court concludes that Title VII requirements should not be imported into § 1983. As Judge Simandle explained in *Glass*, the high requirements in a Title VII action are due to the comprehensive and remedial nature of the statute, which favors alternative dispute resolution over litigation and equitable remedies like reinstatement over damages. 2014 WL 437160 at *15 n. 13. Title VII explicitly limits back pay as an equitable remedy. 42 U.S.C. § 1981a(b)(2) ("Compensatory damages awarded under this section shall not

include back pay [or] interest on back pay . . . .").  Section 1983 damages, on the other hand, are not limited by statute but are based on traditional tort principles that focus on making the plaintiff whole. *See Gurmankin*, 626 F.2d at 1123 ("[A] damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees."); *see also Robinson v. Fetterman*, 387 F. Supp. 2d 483, 484 (E.D. Pa. 2005) (concluding that "common law [tort] principles as they existed in 1871" govern damages in § 1983 actions).

For these reasons, the Court concludes that a constructive discharge analysis is inappropriate in this case. Instead, plaintiff may present evidence at trial of lost wages and retirement benefits[4] alleged to be the result of defendants' adverse action. Defendants are entitled to argue at trial that Migliore's retirement was voluntary and was not caused by the alleged retaliation in this case. However, whether Migliore's retirement was caused by the retaliation is a question of fact for the jury to determine. *See* Third Circuit Model Civil Jury Instructions 4.8.1 ("Plaintiff must show that the injury would not have occurred without defendant's act. Plaintiff must also show that defendant's act played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably foreseeable consequence of defendant's act."); *see also Rivas*, 365 F.3d at 193 ("[T]he presence of the requisite causation is normally a question of fact for the jury.").

### 2. Municipal Liability

On August 12, 2013, the Court issued a Memorandum and Order denying plaintiff's motion for summary judgment and granting in part and denying in part defendants' motion for

---

[4] While plaintiff's complaint seeks "back pay" and "front pay," the Court concludes that the proper way to characterize these damages is as compensatory damages flowing from the alleged violation of Migliore's First Amendment rights.

summary judgment. *Migliore v. Ackerman*, No. 11-4018, 2013 WL 4079650 (E.D. Pa. Aug. 12, 2013). That Order states:

> 6.      With respect to Migliore's claims asserted against the School District of Philadelphia and the School Reform Commission, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED.**

*Id.* at *13.

> In the accompanying Memorandum, the Court explained the Order:
>
> Migliore makes no argument as to whether any official policy or custom caused the alleged retaliation against him in violation of his First Amendment rights, and the Court finds no evidence on the present state of the record that any such policy or custom existed. The Court therefore grants that part of defendants' motion for summary judgment on Migliore's claims against the School District and the SRC.

*Id.* at *12. The Court concluded the Memorandum with the following:

> For the foregoing reasons, the Court denies Migliore's motion for summary judgment, and grants in part and denies in part defendants' motion for summary judgment. The only claims remaining in the case are Migliore's First Amendment claims concerning his speeches and Book against all individual defendants in their personal capacities.

*Id.* at *13. Thus, it is clear that the Court's August 12, 2013, Memorandum and Order disposed of all *Monell* claims against the School District.

In his trial brief on municipal liability, Migliore argues that the Court should *sua sponte* reconsider the August 12, 2013, Memorandum and Order and reinstate Migliore's claims against the School District. The Court declines to do so.

Reconsideration is appropriate if there is "at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). There has been no intervening change in law and no new evidence

presented since the August 12, 2013, Memorandum and Order. The Court concludes that the

challenged rulings in the Memorandum and Order were not clear error and that there is no need

to reconsider those rulings to prevent manifest injustice.

In the August 12, 2013, Memorandum, the Court explained the standard for municipal

liability under *Monell*:

> The liability of a municipality under § 1983 is governed by *Monell v. Department of Social Services,* 436 U.S. 658 (1978). Under *Monell,* municipalities are "included among those persons to whom § 1983 applies." *Id.* at 690. Municipalities, however, cannot be found liable under the doctrine of respondeat superior for claims based on federal civil rights statutes. *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 403 (1997). For a municipality to be found liable, "those whose edicts or acts may fairly be said to represent official policy" must adopt a "policy or custom" causing an actionable § 1983 injury. *Monell,* 436 U.S. at 694 . . . . A municipal "custom" is a practice that is "so widespread as to have the force of law," though the practice "has not been formally approved by an appropriate decisionmaker." *Id.* at 404.

*Migliore v. Ackerman*, 2013 WL 4079650 at *11 (some citations omitted).

The Court further explained that there is a subset of *Monell* liability that may be

established based on "decisions of [a municipality's] duly constituted legislative body or of those

officials whose acts may fairly be said to be those of the municipality." *Id.* quoting *Board of

County Comm'rs of Bryan County*, 520 U.S. at 403-04. This subset of *Monell* liability arises

when the constitutional violation is caused by "a deliberate choice to follow  a  course  of  action

. . . made from among various alternatives by the official or officials responsible for establishing

final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475

U.S. 469, 483 (1986) (plurality opinion); *see also Jett v. Dallas Independent Sch. Dist.*, 491 U.S.

701, 737 (1989); *St. Louis v. Prapotnik* , 485 U.S. 112 (1988) (plurality opinion). The Court of

Appeals for the Third Circuit determined that "[t]he Supreme Court's decision in *Pembaur*

makes clear that an official with policymaking authority can create official policy, even by

rendering a single decision." *McGreevy v. Stroup*, 413 F.3d 359, 367-68 (3d. Cir. 2005).

"[W]hether an official had final policymaking authority is a question of state law." *Pembaur*, 475 U.S. at 483.

In this case, the Court concluded in 2013 that there was "no evidence on the present state of the record that any . . . policy or custom [of First Amendment retaliation] existed." *Migliore v. Ackerman*, 2013 WL 4079650 at *12. No evidence has been presented on this issue subsequent to the 2013 Memorandum and Order. In his trial brief, Migliore does not identify any evidence showing a genuine dispute of material fact as to the existence of such a policy. Accordingly, the Court concludes there is no reason to reconsider its 2013 conclusion that Migliore's *Monell* claim based on an alleged custom fails as a matter of law.

Migliore also argues that his claim against the School District can proceed based on *Pembaur* liability for a final decision of a policymaker. The Court rejects this argument. Under the Pennsylvania School Code, there cannot be a demotion of a professional employee until after a hearing and a vote of the board of school directors. 24 Pa. Cons. Stat. §§ 5-508, 11-1151. In Philadelphia, the board of school directors is the SRC.

For the reasons set forth in the Court's Memorandum and Order dated December 16, 2014, Migliore's claims against the School Reform Commissioners in their individual capacity fail as a matter of law. *Migliore v. Archie*, No. 11-cv-4018, 2014 WL 7177368 (E.D. Pa. Dec. 16, 2014). Migliore has failed to present any evidence that the School Reform Commissioners who presided over his case were aware of his speeches or his book.  Further, Migliore has presented no evidence that the School Reform Commissioners' decision was based on anything other than the evidence presented at the hearings held before Commissioner Dworetzky. The Court therefore concluded in 2014 that Migliore failed to establish a genuine dispute of material fact as to his First Amendment retaliation claim against the individual Commissioners. Accordingly,

there can be no *Pembaur* liability in this case because there is no evidence that the final policymakers in this case violated Migliore's First Amendment rights.

Migliore also argues that the School District can be held liable based on a "cat's paw" theory of liability. The Court rejects this argument. As the Court of Appeals for the Seventh Circuit has explained, cat's paw liability is not available in a § 1983 action against a municipality. *Waters v. City of Chicago*, 580 F.3d 575, 586 (7th Cir. 2009). In an employment discrimination suit brought by a municipal employee pursuant to § 1983, the municipality employer can only be held liable if the requirements of *Monell* are met. *See, e.g., Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).

Because Migliore has not identified any error in the Court's August 12, 2013, Memorandum, the Court declines to reconsider the grant of defendants' motion for summary judgment as to Migliore's claims against the School District.

### 3. Demotion and Pennsylvania School Code

The Court must address a final issue on which there was dispute at the final pretrial conference. By Orders dated June 16, 2015, the Court ruled on plaintiff's six Motions in Limine and defendants' six Motions in Limine. The Court granted plaintiff's Second Motion in Limine and ruled that "defendants are precluded from arguing at trial, in any variation, that plaintiff's reassignment from the position of an assistant to that of a teacher by the administrative staff of the School District was accomplished in compliance with Pennsylvania law." The Court denied defendants' Fourth Motion in Limine for the same reason and concluded that the Court would allow testimony and other evidence referring to the demotion of plaintiff as not in compliance with the requirements of the Pennsylvania School Code.

Nevertheless, the parties continue to disagree on the characterization of the demotion. As the Court explained in the June 16, 2015, Order ruling on plaintiff's Motions in Limine:

> Under Pennsylvania tenure law, a [SRC] hearing must take place before a lawful demotion of a tenured School District employee can be effectuated. *See* 24 Pa. Cons. Stat. Ann. § 11-1151 ("[T]here shall be no demotion of any professional employe[e] either in salary or in type of position, except as otherwise provided in this act, without the consent of the employe[e], or, if such consent is not received, then such demotion shall be subject to the right to a hearing before the board of school directors and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employee."). The administrative staff of the School District did not comply with the relevant provisions of Pennsylvania tenure law when they reassigned plaintiff from the position of an assistant principal to that of a teacher without a prior SRC hearing.

The parties have agreed that Migliore was demoted in June 2009. Because the required hearing before the SRC did not occur prior to June 2009, the demotion did not comply with the School Code and the Court will so instruct the jury at trial.

## IV.    CONCLUSION

The Court concludes that Migliore is not precluded by the Commonwealth Court's 2013 decision from seeking lost wages and retirement benefits resulting from the alleged retaliation in this case. In addition, the Court concludes that the August 12, 2013, Memorandum and Order dismissed all claims against the School District and that reconsideration of that Order is not warranted. An appropriate order follows.

18